IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MELISSA SHERMELLE DUPRE,**

       **Plaintiff,**

    **vs.**                        **Civ. No. 23-124 DHU/JFR**

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration,**

       **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]**

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 11)[2] filed March 28, 2023, in connection with Plaintiff's *Memorandum Pursuant to Supplemental Rule 3 for Social Security Actions Under 42 U.S.C. 405(g),* filed June 19, 2023. Doc. 18. On September 8, 2023, Defendant filed a Response. Doc. 24. On October 2, 2023, Plaintiff filed a Reply. Doc. 25. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's Motion is not well taken and recommends that it be **DENIED.**

## I. Background and Procedural Record

Plaintiff Melissa Shermelle Dupre ("Ms. Dupre") alleges that she became disabled on October 1, 2019, at the age of thirty-four years and eleven months, because of von Willebrand

---

[1] On February 16, 2023, United States District Judge David H. Urias entered an Order of Reference referring this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.  Doc. 9.

[2] Hereinafter, the Court's citations to Administrative Record (Doc.11), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

factor 8.  Tr. 59.  Ms. Dupre completed eleventh grade in 2003, and has worked as a survey

agent, store laborer, plant worker and housekeeper.  Tr. 53, 290.  Ms. Dupre stopped working on

October 4, 2019, because of her medical condition.  Tr. 281.

On January 9, 2020, Ms. Dupre filed an application for Social Security Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401

*et seq*., and an application for Supplemental Security Income ("SSI") under Title XVI of the Act,

42 U.S.C. § 1381 *et seq.*  Tr. 240-43, 247-53.  On September 16, 2020, Ms. Dupre's applications

were denied.  Tr. 57, 58, 59-70, 71-82, 131-34, 135-38.  On March 24, 2021, Ms. Dupre's

applications were denied at reconsideration.  Tr. 89, 91, 93-111, 112-130, 152-55, 156-60.

Thereafter, Ms. Dupre requested a hearing.  Tr. 166-67.  On September 20, 2021, Administrative

Law Judge (ALJ) Paul Isherwood held a hearing.  Tr. 41-56.  Ms. Dupre was represented by

Attorney Leah Hull.[3]  *Id*.  On November 20, 2021, ALJ Isherwood issued an unfavorable

decision.  Tr. 21-35.  On January 20, 2023, the Appeals Council issued its decision denying

Ms. Dupre's request for review and upholding the ALJ's final decision.  Tr. 1-7.  On

February 10, 2023, Ms. Dupre timely filed a Complaint seeking judicial review of the

Commissioner's final decision.  Doc. 1.

## II.  Applicable Law

### A.    Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance

---

[3] Ms. Dupre is represented in these proceedings by Attorney Matthew Robert McGarry.  Doc. 1.

benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4]  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b).

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

    **B.**    **Standard of Review**

    The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking

4

its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the

agency.  *Langley*, 373 F.3d at 1118.

## III.  <u>Analysis</u>

The ALJ determined that Ms. Dupre met the insured status requirements of the Social

Security Act through December 31, 2025, and that she had not engaged in substantial gainful

activity since her alleged onset date through her date last insured.[5]  Tr. 26.  He found that

Ms. Dupre had severe impairments of asthma, factor VIII deficiency, hemophilia A,

von Willebrand disease, and deep vein thrombosis of the left lower extremity.  Doc. 27.  The

ALJ further found that Ms. Dupre had nonsevere impairments of obesity, polyarthralgia,

fibromyalgia, and anxiety and depression.  Tr. 27-28.  The ALJ determined that Ms. Dupre's

impairments did not meet or equal in severity any of the listings described in the governing

regulations, 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 30.  Accordingly, the ALJ proceeded

to step four and found that Ms. Dupre had the residual functional capacity to perform light work

as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except for the following limitations:

> she can occasionally climb, balance, stoop, kneel crouch, and crawl.  The claimant
> can have occasional exposure to extreme temperatures, humidity, wetness,
> vibration and workplace hazards.  She can have occasional exposure to
> concentrated dusts, odors, fumes and pulmonary irritants.

Tr. 31.  The ALJ determined that considering Ms. Dupre's age, education, work experience, and

residual functional capacity, that she was capable of performing her past relevant work as a store

laborer as performed.  Tr. 33.  The ALJ also determined that there are other jobs that exist in

---

[5] The ALJ explained that Ms. Dupre recorded earnings in 2020 that exceeded substantial gainful activity.  Tr. 26-27.
However, "[g]iven that the claimant also reported that she stopped working [in the last two quarters] due to her pain,
the undersigned will consider this work an unsuccessful work attempt."  *Id.*

significant numbers in the national economy that Ms. Dupre can perform.[6]  Tr. 34-35.  The ALJ

determined, therefore, that Ms. Dupre was not disabled.  Tr. 35.

A.     **Arguments**

In support of her Motion, Ms. Dupre argues that the ALJ's RFC is not based on

substantial evidence because he failed to properly assess her subjective complaints.  Doc. 18 at

6-12.  Ms. Dupre argues that the ALJ improperly discounted her direct testimony that her leg

swelling and pain limit her ability to stand to no more than one hour and her ability to walk to no

more than 15 minutes before needing a 30-minute rest, and that her symptoms are not relieved

with medication.  *Id.*  Ms. Dupre further argues that the ALJ improperly cherry-picked,

mischaracterized, or altogether failed to discuss exam and treatment notes in which providers

observed and noted findings to support her alleged symptoms.  *Id.*  For example, Ms. Dupre cites

an October 31, 2019, note in which ER physician Jeremy Saul, M.D., noted on physical exam

that Ms. Dupre appeared anxious, "to be in pain," and had a limping gait and localized weakness

of the right leg.  *Id.*  Ms. Dupre cites an October 12, 2020, treatment note in which PA Jaclyn

Miramontez noted on physical exam that Ms. Dupre appeared uncomfortable, experienced pain

on motion of the left wrist and left shoulder, had an abnormal Schober's index, tenderness on

palpation of the sacroiliac joint and trochanteric bursa, and was tender on 18/18 trigger points.

*Id.*  Ms. Dupre cites a November 6, 2020, treatment note by D.O. Sanjay Chabra, who confirmed

PA Miramontez's possible fibromyalgia diagnosis.  *Id.*  Ms. Dupre cites a March 1, 2021,

treatment note in which D.O. Chabra noted on physical exam that Ms. Dupre appeared

---

[6] The VE expert identified representative occupations of Inspector, Hand Packager (DOT code 559.687-074, light exertion, unskilled, SVP 2, 10,100 jobs nationally); Assembler, Small Products (DOT code 706.684-022, light exertion, unskilled, SVP 2, 126,000 jobs nationally); Routing Clerk (DOT code 222.687-022, light exertion unskilled SVP 2, 36,500 jobs nationally); Marker (DOT code 209.587-034).  Tr. 35.

uncomfortable, had an abnormal Schober's index, tenderness on palpation of the sacroiliac joint

and trochanteric bursa, and had 16/18 trigger points. *Id.*  Finally, Ms. Dupre cites an October 5,

2021, ultrasound of her left lower extremity which demonstrated "echogenic thrombus in the

proximal to mid left femoral vein an[d] echogenic, noncompressible thrombus in the popliteal

vein," compatible with chronic DVT.  *Id.*

Last, Ms. Dupre argues that the ALJ failed to reconcile his finding that the medical

record evidence demonstrated Ms. Dupre responded well to conservative treatment with her

direct testimony that medications had not been effective in relieving her pain. *Id.*  Ms. Dupre

argues that this gap in logic precludes meaningful review of the decision and further erodes

support for the ALJ's conclusions regarding Ms. Dupre's subjective complaints.  *Id.*

The Commissioner asserts that substantial evidence supports the ALJ's determination and

that the ALJ recognized Ms. Dupre had physical impairments that limited the type of work she

could perform, but reasonably concluded that her impairments did not preclude all work.  Doc.

24 at 5-12.  The Commissioner also asserts that the ALJ discussed the objective medical

evidence that was not entirely consistent with Ms. Dupre's claim of disabling symptoms. *Id.*

For example, the ALJ noted that despite Ms. Dupre's pulmonary complaints, imaging of her

chest was normal; that imaging during the relevant period of time demonstrated no DVT; and

that while findings on physical examination occasionally showed some left lower extremity

tenderness and swelling or gait problems, the vast majority of objective findings demonstrated

normal muscle tone and strength, normal gait, and no swelling.  *Id.*

The Commissioner asserts that the ALJ reviewed Ms. Dupre's daily activities and

determined they were also at odds with her reported disabling symptoms.  *Id.*  For example, the

ALJ noted that Ms. Dupre was able to make simple meals, shop, care for her personal hygiene,

and do some household chores with breaks. *Id.* The ALJ emphasized that Ms. Dupre worked at substantial gainful activity level for approximately seven months during the relevant period of time which also undermines her complaints. *Id.* The Commissioner asserts that the ALJ noted that Ms. Dupre's treatment was conservative consisting of an inhaler and prescribed medications, and that despite Ms. Dupre's complaints of shortness of breath she continued to smoke. *Id.*

The Commissioner asserts that the ALJ acknowledged Ms. Dupre's testimony that nothing helped her symptoms, but reasonably explained that the severity of her complaints was undermined by medical record evidence showing she "responded well to conservative treatment." *Id.* For example, the ALJ cites records demonstrating that Ms. Dupre's complaints of pain in her wrist and shoulder were resolved with conservative care, and that sometimes Ms. Dupre would have no complaints and could physically function without difficulty with her course of treatment. *Id.*

Finally, the Commissioner contends that the ALJ did not overlook evidence of abnormal physical exam findings Ms. Dupre cited and instead specifically discussed the records Ms. Dupre claims he ignored. *Id.*

In sum, the Commissioner contends Ms. Dupre's argument amounts to nothing more than an improper request to this Court to reweigh the evidence, which it may not do. *Id.*

In her Reply, Ms. Dupre argues that the ALJ's citation to certain findings is insufficient to convey how the ALJ considered these findings. Doc. 25 at 2-3. Ms. Dupre further argues that the ALJ's "narrow reliance" on objective evidence in his consideration of Ms. Dupre's subjective complaints was contradictory to the known lack of objective findings fibromyalgia produces. *Id.* Lastly, Ms. Dupre argues that she is not asking this Court to reweigh the evidence, but to find that the ALJ's consideration of the evidence was not appropriate under the regulations. *Id.*

B.   **Legal Standards**

1.   **RFC Assessment**

Assessing a claimant's RFC is an administrative determination left solely to the Commissioner "based on the entire case record, including objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an administrative finding).[7]   In assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record.  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2) and (3), 416.945(a)(2).  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.   Further, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."  *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion with citations to specific medical facts and nonmedical evidence, the court will conclude that the ALJ's RFC assessment is not supported by substantial evidence.  *See Southard*

---

[7] The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017.  82 Fed. Reg. 5844, 5845, 5867, 5869.  Mr. Chavez filed his claim on April 18, 2016.  Tr. 385-89.

*v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003).  The ALJ's decision must be sufficiently

articulated so that it is capable of meaningful review.  *See Spicer v. Barnhart*, 64 F. App'x 173,

177-78 (10th Cir. 2003) (unpublished).

### 2.     Evaluating Symptoms

When evaluating a claimant's symptoms, the ALJ must use the two-step framework set

forth in 20 C.F.R. § 404.1529.  First, the ALJ must determine whether objective medical

evidence presents a "medically determinable impairment" that could reasonably be expected to

produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b).  Second, after finding a

medically determinable impairment, the ALJ must assess the intensity and persistence of the

alleged symptoms to determine how they affect the claimant's ability to work and whether the

claimant is disabled. 20 C.F.R. § 404.1529(c).  At the second step, the ALJ considers "all of the

available evidence" about how symptoms affect the claimant—including a claimant's statements

about the intensity, persistence, and limiting effects of her symptoms; the objective medical

evidence; information from medical sources about the claimant's pain or other symptoms; and

information from nonmedical sources about the claimant's pain or other symptoms. *Id.*  The ALJ

considers a non-exhaustive list of factors provided in 20 C.F.R. § 404.1529(c)(3), which include:

1.     Daily activities;

2.     The location, duration, frequency, and intensity of pain or other symptoms;

3.     Factors that precipitate and aggravate the symptoms;

4.     The type, dosage, effectiveness, and side effects of any medication an
individual takes or has taken to alleviate pain or other symptoms;

5.     Treatment, other than medication, an individual receives or has received for
relief of pain or other symptoms;

6.      Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.,* lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.      Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*See also* SSR 16-3p, 2017 WL 5180304 at *7-8.  "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."  SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

In evaluating a claimant's subjective symptom evidence and other matters, an ALJ must discuss not only "the evidence supporting [her] decision," but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).  Along these lines, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation and citation omitted).  Likewise, an ALJ is not permitted to "mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463–64 (10th Cir. 1987)). Failure to follow these controlling legal standards is grounds for remand.  *See, e.g., Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

**C.      The ALJ Properly Evaluated Ms. Dupre's Symptoms**

The ALJ discussed and summarized the medical record evidence as it relates to Ms. Dupre's symptoms as follows:

> While the medical records detail symptoms resulting in certain limitations, the objective medical records fail to support the severity of impairments and symptoms alleged, but correspond with the given residual function capacity herein.  In October

11

2018, the claimant was diagnosed with left leg deep vein thrombosis and bilateral pulmonary emboli in the lower lobes, primarily in the third-degree pulmonary arteries (Ex. 1F/3, 1F/71-74, 3F/23, 3F/44). It was also discovered that she had hereditary blood coagulation disorders, Von Willebrand disease, factor VIII deficiency and associated hemophilia A (Ex. 1F/28, 1F/33, 12F). Despite conservative treatment measures, she complained of continued lower extremity pain and swelling, as well as shortness of breath (Ex. 2F). During the relevant period, she reported a worsening of these symptoms, including fatigue, numbness and muscle spasms in her back, with a few associated emergency room visits (Ex. 3F/4, 4F/6, 7F/1, 11F/6). In early 2020, an x-ray of the chest revealed normal cardiac size, no infiltrate, fluid nor mass (Ex. 11F/10). A computed tomography (CT) scan of the chest revealed no pulmonary embolism (Ex. 11F/12). An ultrasound of the bilateral lower extremities revealed no thrombi on either side. Major venous structures were compressible and exhibited positive responses (Ex. 7F/16). A pulmonary function test, completed in late 2020 revealed no airway obstruction, normal lung volumes and the diffusing capacity for carbon monoxide was borderline (Ex. 11F/48). An ultrasound conducted in October 2021 revealed echogenic thrombus in the proximal to mid left femoral vein and noncompressible thrombus in the popliteal vein, compatible with DVT (Ex. 12F/13).

She continued treatment with coumadin, Xarelto and an inhaler (Ex. 4F, 7F). Despite her complaints of shortness of breath, she continued smoking cigarettes (Ex. 11F/19, 12F/14, 12F/25). Her respiratory examinations were largely normal, revealing her respirations were non labored, chest was nontender, breath sounds were within normal limits, she spoke full sentences and she was without low oxygen saturation. She had normal sinus rhythm. At times, she was observed with edema in her lower extremities, as well as limping gait. However, she was largely observed with a normal gait, no joint swelling, no pedal edema, full to near full strength in the bilateral lower extremities, normal muscle tone and normal movement of all extremities (Ex. 3F/2, 3F/4-5, 4F/7, 7F/2, 7F/6, 8F/4, 8F/17, 8F/30, 10F/14, 10F/22, 10F/30, 11F/6, 12F/15, 12F/35).[8] Overall treatment notes show

---

[8] Ex. 3F/2:Triage Nurse Jenna Pryor, RN, October 31, 2019 (appears in no acute distress; patient states she is short of breath, but speaks full sentences, not tachypneic, without a low oxygen saturation; normal sinus rhythm, capillary refill less than 2 seconds, pulses within normal limits, lower extremity edema present) – Tr. 581; Ex. 3F/4-5: ER Treatment Note, Jeremy Saul, M.D., October 31, 2019 (no acute distress, anxious, appears to be in pain, no respiratory distress, lower extremities exhibit normal ROM, no lower extremity edema, no tenderness in other extremity areas, limping gait (antalgic), localized weakness of the right leg (5/5 normal strength), right knee flexion (5/5 normal strength), right knee extension (5/5 normal strength), right foot (5/5 normal strength), right plantar flexion (5/5 normal strength), right dorsiflexion (5/5 normal strength), left leg (4+/5 movement possible against some resistance by examiner), left knee flexion (5/5 normal strength), left knee extension (5/5 normal strength), left foot (5/5 normal strength), left plantar flexion (5/5 normal strength) and left dorsiflexion (5/5 normal strength). No sensory deficit. Reflex exam: right patella 1+, left patellar 1+, right Achilles 1+ and left Achilles 1+. No clonus present. No posturing. Chronic right sided and left sided lumbar radiculopathy with motor deficit. Pt. discharged in good condition) – Tr. 583-84; Ex. 4F/7: APRN Michael Troutt, November 18, 2019, Treatment Note (no acute distress; lungs clear to auscultation bilaterally, non-labored; regular rate and rhythm, + peripheral pulses, unable to reproduce chest pains; no clubbing/cyanosis/edema; no kyphoscoliosis; distal sensation intact BL, no focal weakness, alert, oriented x 3) – Tr. 682; Ex. 7F/2: NP Laura Ortega August 7, 2020, Treatment Note (healthy appearing, morbidly obese, ambulating normally, breath sounds normal, good air movement, normal tone and strength, normal movement of all extremities,

12

the claimant responded well to conservative treatment in contradiction to her testimony of continued disabling symptoms.

The undersigned evaluated the claimant's alleged symptoms and considered their possible effect on her ability to work and ability to perform activities of daily living. Social Security Ruling (SSR) 16-3p provides important guidance on evaluating symptoms in adult and child disability claims. The undersigned has taken into consideration the claimant's reported daily activities, including her reports of needing rest breaks while performing household chores and reliance on her sister for assistance in caring for her children (Ex. 4E, hearing testimony). The undersigned has taken into consideration the claimant's assertions that her leg pain and swelling is daily, and limits her to standing no more than one hour and walking no more than 15 minutes, before needing a 30 minute rest break (Ex. 4E, hearing testimony). She indicated she uses a shower chair due to leg pain, as well as a

trace LLE edema, normal gait and station, sensation grossly intact) – Tr. 833; Ex. 7F/6: CNP Jessica Soucy June 29, 2020, Treatment Note (healthy appearing, breath sounds normal, good air movement, normal tone and motor strength, normal movement of all extremities, normal gait and station, sensation grossly intact) – Tr. 837; Ex. 8F/4: PA Miramontez October 12, 2020, Treatment Note (16/18 trigger points, patient appeared uncomfortable, no abnormal breath sounds, sensation intact for light touch, motor strength normal, normal muscle tone, pain elicited by motion of left wrist, pain of left shoulder elicited on motion, Schober's index (finger-floor distance) abnormal, tenderness on palpation of sacroiliac joint, normal gait and stance, normal balance, tenderness on palpation of trochanteric bursa, 75 joints exam normal except for tender trigger points noted, left wrist, lumbar spine) – Tr. 902-04; Ex. 8F/17: D.O. Chabra November 6, 2020, Treatment Note (16/18 trigger points, patient appeared uncomfortable, no abnormal breath sounds, sensation intact for light touch, motor strength normal, normal muscle tone, Schober's index (finger-floor distance) abnormal, tenderness on palpation of sacroiliac joint, normal gait and stance, normal balance, tenderness on palpation of trochanteric bursa, 75 joints exam and all joints examined and determined to be normal) – Tr. 915-16; Ex. 8F/30: PA Miramontez January 8, 2021, Treatment Note (16/18 trigger points, patient appeared uncomfortable, no abnormal breath sounds, sensation intact for light touch, motor strength normal, normal muscle tone, Schober's index (finger-floor distance) abnormal, tenderness on palpation of sacroiliac joint, normal gait and stance, normal balance, tenderness on palpation of trochanteric bursa, 75 joints exam and all joints examined and determined to be normal, RAPID3 – Physical Abilities (without any difficulty)) – Tr. 928-29; Ex. 10F/14: D.O. Chabra March 1, 2021, Treatment Note (16/18 trigger points, patient appeared uncomfortable, no abnormal breath sounds, sensation intact for light touch, motor strength normal, normal muscle tone, Schober's index (finger-floor distance) abnormal, tenderness on palpation of sacroiliac joint, normal gait and stance, normal balance, tenderness on palpation of trochanteric bursa, 75 joints exam and all joints examined and determined to be normal, RAPID3 – Physical Abilities (without any difficulty)) – Tr. 955-57; Ex. 10F/22: PA Miramontez April 5, 2021, Treatment Note (16/18 trigger points, patient appeared uncomfortable, no abnormal breath sounds, sensation intact for light touch, motor strength normal, normal muscle tone, Schober's index (finger-floor distance) abnormal), tenderness on palpation of sacroiliac joint, normal gait and stance, normal balance, tenderness on palpation of trochanteric bursa, 75 joints exam and all joints examined and determined to be normal, RAPID3 – Physical Abilities (without any difficulty)) – Tr. 963-65; Ex. 10F/30: PA Miramontez August 18, 2021, Treatment Note (16/18 trigger points, patient appeared uncomfortable, no abnormal breath sounds, sensation intact for light touch, motor strength normal, normal muscle tone, Schober's index (finger-floor distance) abnormal, tenderness on palpation of sacroiliac joint, normal gait and stance, normal balance, tenderness on palpation of trochanteric bursa, 75 joints exam and all joints examined and determined to be normal, RAPID3 – Physical Abilities (without any difficulty)) – Tr. 971-73; Ex. 11F/6: ER physician Steven Acosta, M.D., March 6, 2020, Exam Note (can fully bear weight, able to ambulate without difficulty, no spinal tenderness, full range of motion, normal gait, no signs of respiratory distress, respirations/breath sounds normal, no DVT, no PE, discharged home) – Tr. 981-93; Ex. 12F/15: Consulting Physician M. Patel, M.D., October 22, 2021, Exam Note (no acute distress, lungs clear, moves all four extremities, no joint swelling, left calf tenderness present, doppler study consistent with 1/2/2020 exam and compatible with chronic DVT) – Tr. 1045-47; Ex. 12F/35: Consulting Physician M. Patel, M.D., June 15, 2021, Exam Note (no acute distress, lungs clear to auscultation, moves all 4 extremities, no joint swelling, no pedal edema, no PE, chronic appearing nonocclusive DVT unchanged from prior exam) – Tr. 1070.

scooter, when grocery shopping (Ex. 7F/8, 7F/14-15, 4E, hearing testimony).  She also reported receiving no relief to her symptoms from medication and that she tries to alleviate her pain by elevating her legs, wearing compression stockings, as well as using a leg device (Ex. 4E, hearing testimony).  The claimant's reported allegations are inconsistent with her largely normal physical examinations (Ex. 3F/2, 3F/4-5, 4F/7, 7F/2, 7F/6, 8F/4, 8F/17, 8F/30, 10F/14, 10F/22, 10F/30, 10F/30, 11F/6, 12F/15, 12F/35).[9]  The undersigned finds that her reported symptoms are not as limiting as alleged.

Tr. 31-32.

Here, the ALJ determined that while Ms. Dupre's "medical records detail symptoms resulting in certain limitations, the objective medical records fail to support the severity of impairments and symptoms alleged." Tr. 31.  Relevant to SSR 16-3p and 20 C.F.R. § 404.1529(c)(3), the ALJ explicitly discussed Ms. Dupre's hearing testimony and her reported functional limitations related to leg pain and swelling and lack of relief from medication.  Tr. 32. The ALJ, however, concluded that Ms. Dupre's reported allegations were inconsistent with her largely normal physical examinations, which the record supports.[10]

Further, Ms. Dupre's arguments are unpersuasive.  To begin, the ALJ cited the medical record evidence Ms. Dupre argues he ignored when considering her symptoms.[11]  Additionally, the ALJ explained how he considered the objective findings from the medical record evidence as set forth above.  The Court finds this sufficient.  Moreover, inasmuch that Ms. Dupre cites objective medical evidence, her argument remains unavailing as it functions as an invitation to reweigh the evidence before the ALJ, contrary to the charge of the applicable standard of review. *See Deherrera v. Comm'r, SSA*, 848 F. App'x 806, 808 (10th Cir. 2021) (setting out the reviewing

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

14

court's standard of review and noting that it does not "reweigh the evidence or retry the case").

Recently, the Tenth Circuit eschewed the same type of request:

> [Claimant] advances several individual criticisms of the ALJ's analysis of the evidence, asserting that the medical evidence could have supported a finding of greater disability.... But while these arguments may show the ALJ could have interpreted the evidence to support a different outcome, they, at most, amount to invitations to reweigh the evidence, which [the reviewing court] cannot do.

*Deherrera*, 848 F. App'x at 810.

Additionally, while the ALJ cannot pick and choose among medical reports or use only portions of evidence that are favorable to his position and disregard those that are not, this requirement does not mean that the ALJ must discuss every piece of controverted evidence. *See Clifton*, 79 F.3d at 1009–10. Rather, it merely requires the ALJ to show that he considered evidence unfavorable to his findings before making them. *See id.* The ALJ did so here. And importantly, the prohibition on "picking and choosing" does not mean ALJs cannot make a finding of non-disability after weighing all probative evidence on either side of the issue and finding the evidence of non-disability more persuasive.

Ms. Dupre's argument that the ALJ failed to reconcile Ms. Dupre's testimony regarding the ineffectiveness of her medications similarly fails because the medical evidence record the ALJ cited demonstrates Ms. Dupre responded to conservative care, *i.e.,* steroid injections helped relieve acute muscle pain (Tr. 581), Ms. Dupre's chronic DVT was managed with anticoagulation therapy and subsequent doppler studies revealed no acute DVT/PE (Tr. 905, 982, 1046, 1048, 1062), Ms. Dupre reported to her providers some benefit and improvement of her fibromyalgia symptoms with Gabapentin (Tr. 967, 975, 1046), Ms. Dupre reported no difficulties with physical abilities on RAPID3 Intakes (Tr. 957, 965, 973), and providers encouraged Ms. Dupre to engage in low impact exercise (Tr. 918, 932, 959, 967, 975).

The Court, therefore, sees no legal error in the ALJ's discussion of the medical record evidence in support of his findings related to Ms. Dupre's alleged symptoms.

Finally, in her Reply, Ms. Dupre argues that the ALJ narrowly relied on objective evidence in his consideration of Ms. Dupre's subjective complaints in contradiction to the known lack of objective findings fibromyalgia produces.  Doc. 25 at 2-3.  The Court, however, disagrees with Ms. Dupre's stance that objective evidence can play no role in evaluating fibromyalgia symptoms.  *See Wilson v. Astrue*, 602 F.3d 1136, 1143 (10th Cir. 2010) (citing *Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 17 n.5 (1st Cir. 2003), for the proposition that the physical limitations resulting from fibromyalgia may lend themselves to objective analysis); *Newbold v. Colvin*, 718 F.3d 1257, 1267-68 (10th Cir. 2013) (affirming ALJ's evaluation of fibromyalgia where the claimant "has had no persistent neural deficits, she has required no narcotic pain medication for her body aches, she has used only over-the-counter pain medication for her severe migraine headaches, she has experienced no medication side effects, she has required no hospitalizations, she has undergone no physical therapy, she uses no assistive devices to ambulate and she has undergone no mental health treatment" and for fourteen months, the claimant "did not receive treatment from [] the physician primarily responsible for managing her fibromyalgia"); *Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015) (affirming where the claimant had full range of motion in her joints, had normal strength, walked and moved without much difficulty, had been able to care for her personal needs, did household chores, went shopping, found relief with medication, and on her doctors' recommendations, stayed active with friends and family); *Romero v. Colvin*, 563 F. App'x 618, 621-22 (10th Cir. 2014) (affirming based on the claimant's daily activities and her statements that she experienced relief from medication and exercise as prescribed by her doctor); *Trujillo v. Commissioner, SSA*, 818 F.

App'x 835, 843-44 (10th Cir. 2020) (an ALJ may credit a diagnosis of fibromyalgia but must still ensure there is sufficient objective evidence to support a finding that the impairment "so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity"; ALJ may consider the claimant's longitudinal record in assessing the existence, severity, and disabling effects of fibromyalgia).

Here, the ALJ properly relied on the largely normal objective findings on physical exam to conclude that Ms. Dupre's alleged symptoms related to pain were inconsistent with the medical evidence record.[12]   The Court, therefore, rejects Ms. Dupre's argument to the extent it implies that the ALJ erred in relying on objective evidence when discussing Ms. Dupre's alleged symptoms and functional limitations.

## IV.  Recommendation

For all of the reasons stated above, the Court finds that Ms. Dupre's Motion is not well taken.  The Court, therefore, recommends that this matter be **DENIED.**

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

---

[12] The ALJ also found persuasive nonexamining State agency medical consultant M. Johnson, M.D.'s assessment regarding Ms. Dupre's ability to do work-related physical activities. Tr. 33.  On March 18, 2021, at reconsideration and having reviewed newly submitted records related to Ms. Dupre's fibromyalgia diagnosis, Dr. Johnson assessed that Ms. Dupre was capable of light work with certain postural and environmental limitations. Tr. 10-01, 106-08, 124-27.  The ALJ's RFC largely tracks Dr. Johnson's assessment, but for assessing more restrictive postural and environmental limitations.  *Compare* Tr. 31 with Tr. 106-08.  Ms. Dupre has not raised any issues related to Dr. Johnson's assessment of her ability to do work-related physical activities or to the ALJ's evaluation of Dr. Johnson's assessment.